not to the same extent, as by the original pavement. In re Phillips, 60 N. Y. 21; In re Burke, 62 N. Y. 224; People v. Mayor, etc., of Brooklyn, 4 N. Y. 419–440; Genet v. City of Brooklyn, 99 N. Y. 306, 1 N. E. 777; Spencer v. Merchant, 100 N. Y. 585, 3 N. E. 682; Moran v. City of Troy, 9 Hun, 540; Voght v. City of Buffalo, 133 N. Y. 463, 31 N. E. 340; Markey v. City of Brooklyn, 65 N. Y. 346; In re Sharp, 56 N. Y. 247; Jones v. Town of Tonawanda, 158 N. Y. 438, 53 N. E. 280.

It follows that the decision and order appealed from should be affirmed, with costs. All concur.

---

## In re WHITE.

(Supreme Court, Appellate Division, Second Department. June 12, 1900.)

EXECUTORS AND ADMINISTRATORS—OPENING ACCOUNT—FRAUD.

A notice of appearance for a resident administrator in compulsory accounting proceedings against him was filed and served on the parties interested by his attorneys. Subsequently he withdrew his authorization from one of them, requesting them to take no further action in the proceedings, but gave no notice thereof to the surrogate, or to the parties interested. No other attorneys appeared or pretended to act for him in the proceedings except in one or two incidental matters, and he took no steps to obtain a substitution of attorneys, and absented himself from the state, though he knew a reference had been ordered to try certain issues raised by objections to an account prepared by himself. Every effort was made to give him notice of the hearing before the referee, not only through his attorneys of record, but by personal notice through mail in the manner prescribed by statute. *Held*, on his petition to vacate a decree confirming the referee's report and settling the account, that the fact that he took no part in the proceedings before the referee, and was not represented by an attorney on the reference, did not operate fraudulently upon his rights, within Code Civ. Proc. § 2481, subd. 6, authorizing the surrogate to open a decree for fraud.

Appeal from order of surrogate, Kings county.

Compulsory accounting proceedings against Josiah J. White, as former administrator of Eliza T. White, deceased. From an order denying a petition to vacate a decree confirming a referee's report and settling a final account, said administrator appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Edward C. Perkins, for appellant.
Charles H. Otis, for respondent.

WOODWARD, J. The appellant has been much in court during the past few years in matters growing out of the estate of his late wife, Eliza T. White, and this appeal is from an order of the surrogate of Kings county denying the petition of Josiah J. White, as the former administrator of his wife's estate, and as general guardian of his infant son, in which he prayed for an order vacating and setting aside a decree of the said surrogate's court, entered April 25, 1898, confirming the report of James Troy as referee upon a reference to pass upon the account of the said Josiah J. White as ad-

ministrator, and settling his accounts as such administrator, and directing him to surrender to the respondent Davenport securities of large value, and charging him personally with upwards of $13,000. The authority for this proceeding, as contended by the appellant, is subdivision 6 of section 2481 of the Code of Civil Procedure, which provides that the surrogate has power "to open, vacate, modify, or set aside, or to enter, as of a former time, a decree or order of his court, or to grant a new trial or a new hearing for fraud, newly-discovered evidence, clerical error, or other sufficient cause," and that "upon an appeal from a determination of the surrogate, made upon an application pursuant to this subdivision, the general term of the supreme court has the same power as a surrogate; and his determination must be reviewed, as if an original application was made to that term." The court, in discussing this section of the Code, in Re Tilden, 98 N. Y. 434, 442, say:

"It would, therefore, seem that the power conferred upon the surrogate was limited to cases of 'fraud, newly-discovered evidence, clerical errors, or other sufficient cause,' and would preclude him from exercising the jurisdiction conferred by that section for other causes. Under settled rules of interpretation, the words 'or other sufficient cause' must be interpreted to mean causes of like nature with those specifically named. The maxim 'Noscitur a sociis' applies, and limits the signification of the general phrase."

The question thus presented upon this appeal is whether the facts alleged by the appellant, conceding them to be true, are sufficient to warrant the surrogate or this court in exercising the jurisdiction. There is no suggestion of clerical errors or of newly-discovered evidence, and we are thus brought to the consideration of the question of fraud in its legal aspects in determining this appeal. It is contended by the appellant that:

"Mr. White had no notice of the order of reference or of the proceedings before the referee, and took no part in them; that he was not represented by attorney upon the reference; that Messrs. Veeder & Sullivan, who are said to have been served as his attorneys with notice of these proceedings, were not his authorized attorneys; that his authorized attorney, Mr. Graves, had no notice or knowledge of the proceedings; and that the report was confirmed and the decree was made against his opposition and that of his real attorney, Mr. Graves, neither he nor Mr. Graves being allowed by the surrogate to be heard in opposition to the report or to the motion to confirm it."

If these allegations were in fact true in spirit, there would be little trouble in holding that they had operated fraudulently upon the rights of the appellant, and that there was reason for exercising the jurisdiction, and in granting, in some degree at least, the relief prayed for in the petition. After a careful reading of the affidavits and the evidence contained in the record, we are forced to conclude that the statements made by the petitioner do not present the real facts, and that the order of the surrogate should be affirmed. The facts, as they appear from the record, show that on the 17th day of November, 1891, Josiah J. White was appointed administrator of the estate of Eliza T. White. On the 15th day of February, 1897, the Long Island Loan & Trust Company, as temporary guardian of Frederic Hall White, the sole next of kin of Eliza T. White, filed a petition in the surrogate's court of Kings county for a citation requiring Josiah J. White to show cause why he should not file an account

of his proceedings as such administrator. On the 23d day of February, 1897, William D. Veeder and William Sullivan filed a notice of appearance for Josiah J. White as such administrator in said accounting proceeding, and served a copy thereof upon George S. Ingraham, attorney for the Long Island Loan & Trust Company. This was done with the authority of Mr. White. There has never been any substitution of attorneys, nor has any other notice of appearance ever been filed or served in this proceeding. It appears, however, that on the 24th day of February, 1897,—the day following the filing of the notice of Veeder and Sullivan,—Mr. White wrote a letter to Mr. Veeder personally, in which he withdrew from Mr. Veeder the authority to appear for him in the proceeding, but no notice of this fact appears to have been given to Mr. Sullivan, to the surrogate, or to the other attorneys interested in the proceeding. On the 25th day of February, 1897, the surrogate's court made its order directing said White to file an account of his proceedings on or before March 11, 1897, this order reciting the appearance of White by William D. Veeder and William Sullivan as attorneys. While it does not appear clearly from the record, there is a suggestion, both in the letter of Mr. White to Mr. Veeder and in the affidavit of Veeder and Sullivan, that Mr. White was unwilling to include in his account matters which his attorneys believed should properly be included, particularly in reference to certain securities; and it was probably owing to this fact that Mr. White, on the 24th day of February, withdrew his authorization from Mr. Veeder. On the 22d day of April, 1897, Mr. White filed a document which he called an account of his proceedings as administrator. This document does not bear the indorsement or the signature of any one as attorney, and it may be gathered from the evidence that it was drawn by Mr. White, and did not have the sanction or approval of any one of his various counsel. The document was physically handed to the clerk of the surrogate's court by Horace Graves, an attorney, who afterwards, and on the 17th day of May, 1897, entered an ex parte order amending the alleged account of Mr. White, which recited that the same was made on motion of Horace Graves, attorney; but Mr. Graves, in an opposing affidavit, states that "at the time of said filing deponent was aware that Messrs. Veeder and Sullivan had appeared in the compulsory accounting proceedings as said Josiah J. White's attorneys," and that he "remembers a conversation with Hon. James Troy, referee, in said accounting proceedings, which occurred within a day or two after said referee's appointment, in which deponent stated that Josiah J. White had informed deponent that said accounting proceedings had been referred to said Troy," and that "deponent was informed by said Josiah J. White that Messrs. Veeder and Sullivan were his attorneys in the accounting proceedings, and deponent never heard that any different attorney was substituted. Deponent never pretended to be the attorney of said White in said proceedings, except in two or three incidental matters." The joint affidavit of Messrs. Veeder and Sullivan states that:

"An account, such as we advised him he was legally bound to render, was prepared by a professional accountant under our direction. But, instead of

filing that account, he, contrary to our advice, filed the said paper purporting to be his account. After that he never consulted with us on the subject of the judicial settlement of his account. We, however, notified him that Judge Troy had been appointed referee, and also that we had been served with notice of hearing before the referee."

It appears, therefore, that Mr. White recognized Messrs. Veeder and Sullivan as his attorneys; that these attorneys filed a notice of appearance in his behalf; that no substitution of attorneys ever took place; that Mr. Graves never pretended to act as his attorney in the proceedings, or filed any notice of appearance; and that Mr. White never took any steps to make a change in his legal representative in this proceeding, although he was notified of the appointment of the referee, and of the service of a notice of a hearing before the referee upon Messrs. Veeder and Sullivan as his attorneys. In May, 1897, an order of the surrogate's court was made revoking the letters of administration granted to Mr. White, and on the 13th day of that month letters of administration on the estate of Eliza T. White were issued to William B. Davenport, and an order was made bringing in Mr. Davenport as such administrator. Objections to the alleged account of Mr. White were filed by the Long Island Loan & Trust Company as guardian, and by Mr. Davenport as administrator, and by an order of the surrogate's court the issues were referred to Hon. James Troy, referee, for trial. Hearing of the issues was brought on by notice served upon Messrs. Veeder and Sullivan as attorneys, and a copy of the notice of hearing was mailed to Josiah J. White at his residence, 136 Columbia Heights, Brooklyn. Mr. White denies that he ever received this notice by mail, or that he had any notice of the hearing, or of the appointment of the referee; but the evidence in the record appears to entirely overcome this denial. An excerpt from one of Mr. White's numerous affidavits will be instructive upon this point, as it shows the mental processes of the appellant in his effort to avoid the responsibility for his conduct in the administration of this estate. After denying the matters stated above, Mr. White says:

"That on the 12th day of August, 1897, deponent closed his house at No. 136 Columbia Heights, Brooklyn, and left the city, with his son, Frederic, who was in very delicate health, and visited various summer resorts in New England, and then went to the state of Massachusetts, and did not return therefrom until the latter part of February, 1898, and that said house continued so closed until that time. That his absence from Brooklyn, and the fact that his residence was closed, was well known to all of the parties who have made answering affidavits herein; and that it was impossible to notify deponent as to said reference, and deponent avers that no notice of the appointment of said Troy as referee, or of any of the hearings or sessions of said reference, were ever served upon him."

Mr. White is a citizen of this state, and by the provisions of section 2538 of the Code of Civil Procedure sections 796–802 of the same Code are made applicable to the proceedings in surrogates' courts. It is not questioned that at the time of filing a notice of appearance Messrs. Veeder and Sullivan were the attorneys of Mr. White, and he was thus submitted to the jurisdiction of the court. 2 Am. & Eng. Enc. Law, 427. If his letter of the 24th of February operated to dismiss these attorneys, it did not have the effect of substituting

Mr. Graves. Section 796 of the Code of Civil Procedure provides that "a notice or other paper in an action may be served on a party or an attorney either by delivering it to him personally or in the manner prescribed in the next section"; and section 797 provides that the service may be made "upon a party or an attorney, through the post-office, by depositing the paper, properly inclosed in a post-paid wrapper, in the post-office or in any post-office box regularly maintained by the government of the United States and under the care of the post-office of the party, or the attorney serving it, directed to the person to be served at the address, within the state, designated by him for that purpose, upon the preceding papers in the action; or, where he has not made such a designation, at his place of residence, or the place where he keeps an office, according to the best information which can conveniently be obtained concerning the same." Mr. White, in his letter of the 24th of February,—the day following the filing of notice of appearance by Messrs. Veeder and Sullivan,—says:

"In the matter of the proceeding instituted by the Long Island Loan and Trust Company, guardian, wherein a citation is purported to have issued by the surrogate's court, requiring me to appear February 25th, 1897, and show cause why I should not render and settle my account as administrator, I hereby withdraw my authorization for your appearance in my behalf in that matter, and forbid your doing so, and request that you take no part in the proceeding in court when the citation is returnable."

The appellant was thus aware of the fact that proceedings had been instituted, and, the notice of appearance having been filed on the 23d day of February by his then attorneys, he must be deemed to have submitted himself to the jurisdiction of the court. Section 799 of the Code of Civil Procedure says: "Where a party has appeared, a notice or other paper, required to be served in an action, must be served upon his attorney." The only attorneys of record in this proceeding are Messrs. Veeder and Sullivan, and it is not disputed that all of the papers in the proceedings were duly served upon these attorneys. But, if it be conceded that the letter of Mr. White to Mr. Veeder operated to dismiss these attorneys, the service of the same notice upon Mr. White, by mailing the same to his address in Brooklyn, was sufficient to give him notice of the hearings before the referee, and he cannot be heard to contend that he has had no notice because he has voluntarily placed himself in a position where, as he tells us in his affidavit, "it was impossible to notify deponent as to said reference." Section 421 of the Code of Civil Procedure, which is made applicable to matters in the surrogate's court by the section of the Code cited above, provides that "the defendant's appearance must be made by serving upon the plaintiff's attorney, within twenty days after service of the summons, exclusive of the day of service, a notice of appearance, or a copy of a demurrer or of an answer." It is only in this way, or by some act equivalent, that the attorney of record may be known; and litigants cannot be compelled to go to the private correspondence of attorneys and clients to discover what particular attorney may at any given moment be authorized to appear for the party sought to be served. If Mr. White desired a substitution of attorneys, he should have taken

the proper steps to notify the court and the litigants of such substitution. The mere incidental employment of Mr. Graves did not operate to make that gentleman the attorney of record in the proceedings for an accounting, entitling him to be served with notices or other papers in the matter; and the affidavit of Mr. Graves that he never "pretended to be the attorney of said White in said proceedings, except in two or three incidental matters," must be conclusive upon this point. So far as the record shows, therefore, Mr. White not only submitted to the jurisdiction of the court by reason of the notice of appearance filed by his attorneys, but he was personally aware of the nature of the proceeding. His attorneys of record were duly served with whatever notices were necessary to bring on the hearing of the issues before the referee appointed for that purpose, and these notices, out of an abundance of caution, were mailed to the residence of Mr. White; and the mere fact that he had absented himself from the state, knowing that these proceedings were pending, without taking any steps to have his mail forwarded to him, cannot give him any rights upon this appeal. He was a resident of this state, and additional and unnecessary notices served upon him in the manner prescribed by law for the service of papers cannot be said to have afforded him no notice of the pendency of the proceedings. He cannot, by his own acts, place himself beyond the reach of notice, and then claim the indulgence of this court because he has failed to personally have notice of the proceedings in their various stages. There is clearly no fraud involved in this transaction; no effort to deprive the appellant of any right. On the contrary, every effort was made to give him notice, not only through his attorneys of record, but by an additional personal notice through the mails in the manner prescribed by the statutes for the service of papers on a party in an action. Under these circumstances we are forced to conclude that the court is without jurisdiction to grant the relief prayed for by the petitioner under the provisions of the Code of Civil Procedure under which the appellant is proceeding. In re Tilden, supra.

While there is no doubt of the power of the courts to relieve against a judgment rendered against a party upon the unauthorized appearance of an attorney in his name in a direct application to the court by motion in the action in which the unauthorized appearance was entered (Vilas v. Railroad Co., 123 N. Y. 440, 25 N. E. 941, 9 L. R. A. 844), we find no case in which a party who has been duly served, and who has appeared by his authorized attorneys, has been allowed to evade the consequences of a judgment because he may have disagreed with his attorneys, and dismissed them, without substituting others in their places, or taking any steps to inform his adversaries of the changed relations. Nor do we find any case in which the appellant has been relieved because he has voluntarily, during the pendency of an action, placed himself in a situation where he could not be served with papers. Subdivision 6 of section 2481, under which the appellant claims the right to relief, further provides: "The powers conferred by this subdivision must be exercised only in a like case and in the same manner as a court of record and of

general jurisdiction exercises the same powers," and, as no court of record would set aside a judgment under the facts presented on this review, we are confirmed in the proposition that the court has no power to grant the relief which the appellant asks on this appeal. From our review of the record we are convinced that the appellant has suffered no injury, that he has been unwilling to act upon the advice of reputable counselors of this court in respect to his duties as an administrator, and that the interests of the estate and of all parties demand that the property should be confirmed to the respondent without further delay.

We are unable to discover any rights of the appellant which accrued upon his appointment as guardian of his son after the latter became 14 years of age. The proceeding for an accounting had been commenced when the appellant was appointed, and the Long Island Loan & Trust Company, as temporary guardian, was responsible, under the provisions of section 2828 of the Code of Civil Procedure, for the rights of the infant under that proceeding. See, also, section 2837.

While the question of the release of the appellant from custody under a warrant of attachment does not appear to have any proper place in this discussion, and was apparently introduced into the affidavits for the purpose of arousing sympathy, the truth seems to be that the appellant was released upon a formal order in habeas corpus proceedings, with the acquiescence of all parties, in an effort to bring about a settlement of the various matters in which Mr. White had become involved. The order appealed from should be affirmed, with costs.

Order affirmed, with $10 costs and disbursements. All concur.